IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Calvin J. Cobb, #291100, | C/A No. 0:09-152-HFF-PJG |
| Plaintiff, | |
| vs. | |
| Mrs. Ann Hallman: Inmate Grievance Administrator; <br> Mrs. Vera Jenkins: I/M Grievance Coordinator (A-K); <br> John Ozimit: SCDC Director; <br> McKither Bodinson: Warden; <br> Doris Gantt: Correctional Officer; <br> Christopher Cobb: Corporal; <br> Netoyia Avenger: Correctional Officer; <br> Franklin Jefferson: Sgt.; <br> Gwendolyn Smalls: Lieutenant; <br> Mark Selby: Corporal; <br> Dotor M. Ramsom: Mental Health Director; <br> Dotor Babes: Medical Director of LCI; <br> Lt. Darryl King: Lieutenant - SMU Supervisor,[1] | **REPORT AND RECOMMENDATION** |
| Defendants. | |

The plaintiff, Calvin J. Cobb ("Cobb"), a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983.[2] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on a motion to dismiss filed by Defendants Avenger, Cobb, and Selby (Docket Entry 71) and a motion for summary judgment filed by all defendants (Docket Entry 83). Pursuant to Roseboro v. Garrison, 528 F.2d 309

---

[1] Based on a review of the filings, the correct spelling of Defendant "John Ozimit" is "Jon Ozmint" and Defendant "Bodinson" is correctly spelled "Bodison."

[2] It appears that Defendants Smith, Dixin, SCDC Correspondence Review Committee, and Inmate Classification Committee were never served; accordingly, pursuant to Federal Rule of Civil Procedure Rule 4(m), these defendants are not proper parties to this action and should be dismissed.



(4th Cir. 1975), the court advised Cobb of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (Docket Entries 72 & 84.) Cobb responded in opposition to the defendants' motion. (Docket Entry 75.) Cobb also filed a cross motion for summary judgment (Docket Entry 86), to which the defendants responded (Docket Entry 87). Having carefully reviewed the parties' submissions, the court finds that the motion to dismiss filed by Defendants Avenger, Cobb, and Selby (Docket Entry 71) should be denied and the defendants' motion for summary judgment (Docket Entry 83) should be granted. Cobb's motion for summary judgment (Docket Entry 86) should be denied.

## BACKGROUND

Cobb's Amended Complaint raises a myriad of claims against the defendants. Cobb alleges that the defendants have confiscated and destroyed his property, been deliberately indifferent to his medical needs, and denied him meaningful access to the courts. He further appears to raise issues relating to his conditions of confinement and to assert that the defendants have subjected him to retaliation. (See generally Docket Entry 35.)

## DISCUSSION

**A.  Motion to Dismiss**

Defendants Avenger, Cobb, and Selby argue that they are entitled to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 4(m) because they were never served and the court therefore lacks jurisdiction over them. However, prior to filing this motion, these defendants filed an Answer that failed to raise insufficiency of service of process as a defense. Accordingly, the court finds that Defendants Avenger, Cobb, and Selby have waived any defense that they might assert that service of process was untimely under Rule 4(m). See Pusey v. Dallas Corp.,

938 F.2d 498, 501 (4th Cir. 1981) ("[B]y failing to raise the defense that service of process was untimely under Rule [4(m)] either in a pre-answer motion or, if no such motion is made, then in its answer, a defendant waives that defense and submits to the personal jurisdiction of the court under Fed. R. Civ. P. 12(h)(1)(B) . . ."). Therefore, the court finds that Defendants Avenger, Cobb, and Selby are not entitled to dismissal on this basis.

**B.     Motions for Summary Judgment**

    **1.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### 2. Exhaustion of Administrative Remedies

The defendants contend that they are entitled to summary judgment on Cobb's claims because Cobb has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).



Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to SCDC policy, an inmate seeking to challenge a disciplinary conviction or complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Defendants argue that Cobb has not exhausted his administrative remedies and that Cobb has failed to provide evidence that he exhausted or filed any grievances relating to the claims in this matter. In response, Cobb refutes this argument and attaches copies of requests to staff, Step One and Step Two grievances and an order from the Administrative Law Court. As stated above, it is the defendants' burden to establish that Cobb has failed to exhaust his administrative remedies. Anderson, 407 F.3d at 683. The court finds that the defendants' general argument, without any additional support, is insufficient to satisfy this burden in light of the documents that Cobb has submitted. Therefore, the court will proceed to address the merits of Cobb's claims.

  **3. Due Process**

    **a. Property Claim**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Cobb alleges that various personal and legal items were destroyed or lost by the defendants. To the extent that Cobb's claim sounds in negligence, the Due Process Clause is not implicated by a

PJG

negligent act of a state official causing unintended loss of or injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995). Therefore, such claims cannot be brought under § 1983.

Moreover, an *intentional* deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. Hudson v. Palmer, 468 U.S. 517 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986) (holding that a prisoner could not maintain a § 1983 action for negligent loss of his personal property because the prisoner could file a civil action in state court for the recovery of personal property under S.C. Code Ann. §§ 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)).

Cobb claims that Defendant Gantt intentionally deprived him of property by throwing Cobb's belongings into a trash dumpster. However, Cobb makes no allegations that such an act was authorized or approved by either prison policy or supervisory officials. In fact, Cobb's Complaint indicates that at least two officers attempted to salvage Cobb's property from the trash, and in Cobb's motion for summary judgment he appears to concede that Defendant Gantt's actions violated the prison policy. Further, Defendant Gantt was allegedly removed from her "Head Property Control Position" as a result of her actions. As Cobb clearly states that Defendant Gantt's actions were intentional and fails to provide any indication that her actions were authorized, Cobb cannot maintain a § 1983 claim regarding this defendant's intentional deprivation of his property, as he has an adequate post-deprivation remedy. See Hudson, 468 U.S. at 533; McIntyre, 784 F.2d at 567.

Cobb appears to contend that this remedy is not adequate because it "failed to bring the relief sought by Plaintiff" and it was not "meaningful" relief. (Docket Entry 35-4 at 2, 7.) However, the fact that Cobb disagrees with the result does not render the remedy inadequate under the Due Process Clause. Further, Cobb's initial speculation that the mailroom staff at Lieber Correctional Institution interfered with the mailing of his summons and complaint to the Dorchester County Clerk of Court because the Clerk's Office failed to acknowledge receipt of the complaint or respond to his inquiries is belied by the record. (Docket Entry 35-4 at 7.) A review of Cobb's subsequent filings indicates that the Dorchester County Clerk has received his complaint. (See Order Denying Mot. to Proceed *In Forma Pauperis* dated January 26, 2010, Docket Entry 86-4 at 18-21.) Accordingly, the defendants are entitled to summary judgment on this claim.

  **b.**  **Segregation**

Cobb also appears to generally contend that the defendants violated his due process rights by placing him in segregation from March 2008 through December 2008. There appear to be two disciplinary convictions that are related to this period of segregation. The record reveals that Cobb was convicted on March 31, 2008 for "Threatening To Inflict Harm on/Assaulting An Employee." Cobb was sanctioned with 180 days of disciplinary detention with a loss of privileges. Warden Bodison attests that this conviction was overturned on rehearing on August 28, 2008 and Cobb's record was amended so that he did not lose any good time credits as a result of his disciplinary time. (Bodison Aff. ¶¶ 12-13, Docket Entry 83-4 at 3.) On June 17, 2008, Cobb was convicted of "Damage, Loss, Destruction or Defacing of Property" and he was sanctioned with 60 days of disciplinary detention and loss of privileges. Cobb has submitted evidence that this conviction was overturned on October 15, 2008. (Docket Entry 86-4 at 25.) Notwithstanding the overturning of

these convictions, Cobb remained in segregation until his transfer to another correctional facility on December 17, 2008. Defendant Bodison attests that Cobb remained there due to his pending transfer to another correctional facility and in the interest of maintaining prison safety.

Cobb's argument that his due process rights were violated with regard to his disciplinary convictions appears to rest solely on the fact that these convictions were overturned. However, he provides no authority for the proposition that the mere fact that a conviction was overturned itself establishes a due process violation. Cf. Wolff v. McDonnell, 418 U.S. 539 (1974) (stating that due process entitles an inmate to written notice of the hearing at least 24 hours in advance, the limited right to call witnesses and present evidence, a written decision addressing the evidence relied on and the reasons for the action, and an impartial tribunal prior to depriving him of a protected liberty interest); Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445 (1985) (requiring there to be some evidence to support the conviction). Moreover, the due process procedures required by Wolff and its progeny are not required unless the challenged discipline implicates a liberty interest by imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Disciplinary segregation does not satisfy this requirement. Id. (rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation); see also Backey v. South Carolina Dep't of Corr., No. 94-7495, 1996 WL 1737 (4th Cir. Jan. 3, 1996) (Table) ("[Plaintiff's] allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke the due process rights he avers were violated in this case); Joseph v. Gillespie, No. 95-7321, 1995 WL 756280 (4th Cir. Dec. 21, 1995) (Table) ("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison

life that would give rise to a liberty interest protected by any procedure."). Moreover, even if Cobb possessed a valid liberty interest, Defendant Bodison has attested that Cobb's continued placement in segregation was done for a legitimate penological reason, which Cobb has failed to refute. See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469-70 (4th Cir. 1999) (holding that it did not violate a large group of inmates' constitutional rights when they were all placed on administrative segregation, where such segregation was "rationally related to the furtherance of the legitimate end of prison security"). Therefore, the defendants are entitled to summary judgment on this claim.

4. **Denial of Access to the Courts**

With regard to the loss or destruction of Cobb's legal papers, liberally construed, this allegation could raise a claim for unconstitutional denial of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a specific actual injury resulting from the alleged denial. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). A plaintiff must "demonstrate the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351. The Court further explained that

> the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were
Page 9 of 19



incarcerated, or habeas petitions. In Wolf v. McDonnell, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to "civil rights actions"—*i.e.*, actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights."

Lewis, 518 U.S. at 354 (internal citations omitted); see also Christopher v. Harbury, 536 U.S. 403, 414-15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

Specificity is required in pleading a denial of access to the courts claim. Cochran, 73 F.3d at 1317. Moreover,

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher, 536 U.S. at 415.

In this case, Cobb's Complaint, as amended, fails to allege any specific facts indicating that he has been denied access to the *courts* or that he has been adversely affected in pursuing his legal claims due to the alleged loss or destruction of his legal papers. The only specific statement that the court has gleaned from Cobb's Amended Complaint is Cobb's speculation that Defendant Walker or Blowe may have destroyed or failed to mail a summons and complaint that Cobb intended to file with the Dorchester County Clerk of Court to initiate a civil action. However, as stated above, this speculation is belied by the order attached to Cobb's motion for summary judgment from the South Carolina Court of Common Pleas in the County of Dorchester dated January 26, 2010. (Docket Entry 86-4 at 18-21.) In his motion for summary judgment, Cobb re-asserts in a conclusory fashion

that he has been denied access to the courts, and he alleges that his claims were impeded and hindered due to the "shortcomings" with the law library and legal assistance program. (Docket Entry 86 at 8.) A review of the electronic case filing system reveals that, contrary to Cobb's assertions, he has regularly filed motions, amended pleadings, letters, and responses in this matter. Between January 2009 and March 2010, it appears that Cobb has filed approximately fourteen such documents, some of which are quite voluminous. Further, the court takes judicial notice that during this same time frame Cobb has regularly filed these types of documents in another pending case, Civil Action No. 0:08-3978-HFF-PJG.

Based on the foregoing, the court finds that Cobb has not alleged or demonstrated any actual injury as required to state a claim for denial of access to the courts. See Lewis, 518 U.S. at 351 (stating that an inmate must demonstrate that the deficiencies in the prison's library or legal assistance program "hindered his efforts to pursue a legal claim"); Cochran, 73 F.3d at 1317 (holding that the district court properly dismissed a claim for denial of access to the courts where the plaintiff failed to identify any actual injury resulting from official conduct); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (observing that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). As observed above, there is no indication that Cobb has been denied access to this court in pursuing a direct appeal from any conviction, a habeas petition, or a civil rights action. See Lewis, 518 U.S. at 354 (Bounds requires inmates to be provided with those tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."); Giarratano v. Johnson, 521 F.3d 298, 305-06 (4th Cir. 2008) (stating that "the right

of access affords only 'the capability of bringing contemplated challenges to sentences or conditions of confinement' ") (quoting Lewis, 518 U.S. at 356). Therefore, summary judgment is appropriate as to this claim.

    **5.    Medical Indifference**

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable

*PJG*

under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Cobb's Complaint, as originally pled, alleged that the defendants failed to provide adequate or proper medical/mental treatment beginning in March 2008. Cobb stated he was suffering from chronic depression, stress, anxiety, weight loss, sleep deprivation and behavioral disorders. He acknowledges that he was seen at "sick-call" on two occasions: Defendant Babes examined him on one occasion and Defendant Ransom and Chaplain Morris spoke with Cobb at least one time. Finally, Cobb asserted that the defendants had committed medical malpractice. (Docket Entry 35-3 at 17.) In Cobb's Complaint as amended, he acknowledges that negligence is insufficient to state a § 1983 claim and repeatedly states in a conclusory fashion that the defendants have been deliberately indifferent to his serious medical needs. Cobb contends that he has suffered physically and mentally. (Docket Entry 35-4 at 11-12.) Finally, in response to the defendants' motion for summary judgment, Cobb re-alleges that the defendants have committed medical malpractice. He also appears to argue that there have been delays in his medical treatment and directs new allegations against Defendant Selby.

In support of summary judgment the defendants have supplied Cobb's medical summaries, which indicate that Cobb has been receiving medical and mental treatment. Moreover, to the extent



that Cobb's claims against the defendants are based on the fact that he believes that he was not treated as quickly as or in a manner that he believed appropriate under the circumstances, such disagreement fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). Further, as stated above, allegations of malpractice are not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Therefore viewing the facts in the light most favorable to Cobb, no reasonable jury could find that the defendants were deliberately indifferent to Cobb's serious medical needs.

### 6. Retaliation

Cobb argues that defendants have retaliated against him for filing multiple grievances and complaints within SCDC and for filing Civil Action No. 0:08-3978-HFF-PJG. However, while

Cobb repeatedly contends that the defendants have harassed him and retaliated against him, Cobb has failed to provide more than these conclusory assertions.[3]

To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id. at 74. An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran, 73 F.3d at 1317; Adams, 40 F.3d at 74.

In this case, Cobb's allegations fail to state a claim of retaliation. The court again observes that Cobb's arguments consist almost entirely of conclusory assertions. Moreover, to the extent that Cobb alleges that he was subjected to retaliatory actions for filing grievances and complaining to staff, inmates have no constitutionally protected right to a grievance or complaint system. See Adams, 40 F.3d at 75. To the extent that Cobb's arguments contend that the retaliatory conduct was the result of filing a civil action with the court, Cobb has failed to assert facts showing that the

---

[3] It appears that Cobb also attempts to assert a separate claim against Defendants Hallman, Jenkins, and Bodison based on their alleged failure to properly process his grievances or timely respond to his grievances. (Docket Entry 35-4 at 3.) However, this claim fails to rise to the level of a constitutional violation under the facts of this case. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Shabazz v. Maynard, No. 0:02-1208-10BD, 2002 WL 32332072 (D.S.C. Nov. 25, 2002) (unpublished) (indicating that "a violation of the SCDC's grievance policy is not a violation of any federal right").

alleged retaliatory actions taken by the defendants violated a constitutional right. To the extent that Cobb alleges that the claims the court has addressed above are the alleged retaliatory actions, for the reasons stated above Cobb cannot demonstrate that the defendants violated a constitutional right. Accordingly, Cobb has failed to allege that the defendants' retaliatory acts were taken "in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Cobb's retaliation claim against the defendants is therefore not cognizable under 42 U.S.C. § 1983.

### 7. Qualified Immunity

The defendants also assert that they are entitled to qualified immunity. The court agrees. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). In this case, because Cobb has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

PJG

**8. Eleventh Amendment Immunity**

To the extent the defendants are sued in their official capacities for monetary damages, they correctly assert that they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989); see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacity, they are immune from suit, as they are treated as "arms of the State" in this capacity. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

**9. Respondeat Superior**

To the extent that Cobb seeks relief from the defendants under a theory of respondeat superior his claims must fail. The doctrine of respondeat superior cannot support liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). Mere knowledge is not sufficient to establish personal participation. Id.

**10. Remaining Claims**

To the extent that Cobb attempts to allege any other constitutional violations, the court finds that he has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). Further, to the extent that Cobb's Complaint could be construed to state additional claims under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

## RECOMMENDATION

For the foregoing reasons, the court recommends that the motion to dismiss filed by Defendants Avenger, Cobb, and Selby (Docket Entry 71) be denied and the defendants' motion for summary judgment (Docket Entry 83) be granted. The court further recommends that Cobb's motion for summary judgment should be denied (Docket Entry 86).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 1, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).